EVA F. ANDERSON
*vs.*
HAROLD L. MARSTON

Cumberland. Opinion, September 16, 1965.

*Julian G. Hubbard,* for Plaintiff.

*Basil A. Latty,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, MARDEN, RUDMAN, JJ. SULLIVAN, J., sat at argument but retired before the decision was adopted.

RUDMAN, J. This is an action of tort in which the plaintiff seeks to recover damages for personal injuries sustained by her through the alleged negligence of the defendant. The verdict was for plaintiff in the sum of twenty-five hundred dollars. The defendant brings the case here on appeal on points stated and on appeal from the denial of a motion for a new trial.

The defendant was the owner of a four unit apartment house. The plaintiff was a tenant of the defendant, occupying a second floor unit. Her son was a tenant in the same apartment house occupying a unit on the first floor. On March 1, 1963, at approximately 10:00 P.M. the plaintiff was returning from the defendant's place of business, which was located across the street from the apartment house. Her son was accompanying her and they were walking on a common way leading to the apartment house and maintained by the defendant. She was proceeding ahead of her son, and he a few feet to the rear, with the intention of visiting her son in his apartment. As they approached the northwesterly corner of the apartment house, and while she was walking at the edge of the common way, which was covered with snow and ice, she tripped over a broken tile which caused her to fall and sustain a severe laceration of her left leg. At the northwesterly corner of the apartment building there was attached to the exterior wall of the house

a metal drain extending down from the roof gutter, to which a twelve-inch piece of tile pipe had been attached for the purpose of diverting the water away from the building. The tile was dislodged and separated from the drain pipe on December 22, 1962, and at the time this accident occurred was broken and the pieces embedded in snow and ice and not visible above the surface.

The defendant's awareness of the condition is clear by his answer to the questions propounded by the presiding justice.

"BY THE COURT:

Q   Did you know that pipe was broken?
A   Yes.

Q   When did you first learn it was broken?
A   When it was broken?

Q   That was how long before - - -
A   December 22nd, the first snow storm.

Q   You knew the pipe was broken all the time between December 22nd, 1962, and March 1st, 1963?
A   Yes, and it was buried under that snow. It got buried up the first snow storm."

The defendant as landlord had control and possession of the passageway in question. Entirely apart from any contractual obligation, this fact imposed upon him the duty to exercise reasonable care and to maintain the passageway reasonably safe for use by the occupants of the premises and by the invited guests of a landlord's tenant.

There was sufficient evidence presented to the jury to support its finding that the defendant landlord retained control of the outside common passageway and was negligent in failing to exercise reasonable care to maintain the walk in a reasonably safe condition and to keep it free from ob-

jects, which would tend to create a hazard to a tenant, a member of a tenant's family and his invitees.

The duty of ordinary care was not fulfilled when the defendant failed to either affix the tile pipe to the drain or remove it from the proximity of the common passageway and prevent it from creating a hazardous condition.

There can be no doubt from all the evidence that there was at the time of this accident, and had been for sometime prior thereto, a broken tile pipe concealed by a covering of snow which was permitted to remain on the common way. This the defendant knew and by reasonable diligence should have known.

This court in *Clifton Thompson* v. *Mary C. Frankus,* 151 Me. 54, 55, said: "It is almost universally held that a landlord who has retained control of common stairways owes to his tenants and their invitees the duty of exercising ordinary care to keep such stairways reasonably safe for their intended use. 32 Am. Jur. 561, Sec. 688 (Note 9 and cases cited); *Sawyer* v. *McGillicuddy,* 81 Me. 318; *Austin* v. *Baker,* 112 Me. 267; *Toole* v. *Beckett,* 67 Me. 544; *Miller* v. *Hooper,* 119 Me. 527; *Robinson* v. *Leighton,* 122 Me. 309; and *Smith* v. *Preston,* 104 Me. 156. 'The opinion in *Smith* v. *Preston, supra,* states the rule of liability thus: in all cases the criterion of liability is the obligation to maintain and repair with the right of control for that purpose.' *Jackson* v. *Leventhal,* 128 Me. 424 at 426." This rule is equally applicable to common ways.

In the case of *Miller* v. *Hooper, et al.,* 119 Me. 527, 529, we said: "We conceive the true rule to be that the owner must exercise due care to keep in reasonably safe repair, stairways and passageways which remain under his own control." A like duty was of course owed by the landlord to the tenant's invitee.

It is fair to assume from the record that the common way in question was the means of access to the apartment occupied by plaintiff's son, where she intended to visit. It was also a means of access to the apartment of which she was a tenant. It was the duty of the defendant to exercise reasonable, ordinary or due care to keep the premises in a reasonably safe condition for plaintiff's use, whether she was there as a tenant of the defendant or as an invited guest of her son.

The jury could have found the injury which she sustained was caused by the broken tile. If the tile had not been obscured and embedded in the snow and ice she would not have sustained the injury complained of. It was for the jury to determine the details of her fall and the cause of her injury.

The defendant's objections to the instructions as given by the presiding justice and his objections to the refusal of the presiding justice to give the requested instructions must be overruled. It appears by the charge that the rules of law applicable to the evidence were fully and correctly stated by the presiding justice in his instructions to the jury. He explained accurately the legal duty owed by the defendant landlord, the effect of any contributory negligence on the part of the plaintiff and the significance of the terms "negligence," "contributory negligence" and "reasonable care." All factual issues were then properly left to the jury.

On cross-examination Roger Blais, a witness for the plaintiff, admitted having been convicted of lascivious cohabitation.

Upon redirect examination the following inquiry was made:

"Q    I again ask you now, is it your intention to marry Mrs. Anderson?

Mr. Latty:  I object.

The Court:  Overrule the objection.  You may answer the question.

A  Yes, I do."

The foregoing question and answer became innocuous in view of the prior testimony of Eva L. Anderson, which was admitted without objection.

Q  Mrs. Anderson, what are your intentions with Mr. Blais?

A  After everything is all straightened out, we are going to get married, but not until everything - - - - -"

A further revealing aspect may be noted in the cross-examination of Eva L. Anderson.

"Q  Are you the same individual, Eva Anderson, who was convicted on July 31st, 1962, in the Brunswick Municipal Court for lascivious cohabitation?

. . . . . . . . . . . .

Q  Are you?

A  I really don't know if I was convicted.  I admitted to it, yes.

Q  Didn't you plead guilty to it?

A  I signed a paper to the effect.  Yes."

Examining the testimony in the light of which party would be the most likely to benefit, it clearly indicates a friendly relationship between the plaintiff and the witness, Roger Blais.  It seems to us instead of mitigating the odium of the conviction, it would cause the jury to more closely examine the testimony of the witness.

It suffices to say if there was error, the defendant was in no way prejudiced thereby.

The presiding justice in his instructions made clear the purpose for which the evidence of a criminal conviction was

admitted by saying "If you find in fact that one or both of the witnesses were convicted of the crime described, you may consider that fact, if you find it to be a fact only, and I repeat, only for the purpose of determining whether or not their testimony is credible. Would you give as much weight had they not been so convicted, if they were in fact convicted of the crime, as you would had they not. That is the sole use which can be made of such evidence."

We now consider the defendant's motion for a new trial stating the following grounds: "(1) The damages are excessive, (2) the plaintiff neither alleged nor proved a claim for which relief should be granted."

We find the complaint does set forth a cause of action, and further Maine Rules of Civil Procedure, Rule 12 (h) provides:

"A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except etc."

The Reporter's Notes in Maine Civil Practice by Field & McKusick states:

"Rule 12 (h) has been held to make it impossible to raise for the first time by motion after verdict or in the appellate court that the complaint is insufficient as a matter of law."

The Commentary, Section 12.6 of Rule 12 states:

"If the pleader elects to file an answer as his first defense step, he should include every defense of law or of fact that is open to him. With the exception listed in Rule 12 (h) any defense or objections not made at this stage is waived."

While we recognize that the extent of the plaintiff's injuries and resulting damages are a question for the jury, no less than the question of liability, the damages in this

case assessed by the jury are clearly excessive. She sustained a laceration of her left leg five inches long and about one-half inch deep. She was treated at the Osteopathic Hospital of Maine in Portland on March 1, 1963, the date of the accident, and was further treated on March 4, 6, 8, 11, 13 and 15. The hospital bill was $39.00. No separate charge was made for the services of Dr. Hans F. Waecker who at the time was an interne at the hospital. She next visited Dr. Waecker on October 8, 1963, he then being in private practice, and incurred a charge of $10.00. The bill states: "10-8-63 Follow up check of well healed laceration. 10-9-63 Report to Mr. Hubbard, review of records." She was unable to follow her employment for three to four weeks and sustained a loss of earnings of $38.50 per week.

The plaintiff is entitled to recover her incidental medical expenses of $49.00, loss of earnings of $154.00, and reasonable compensation for her pain and suffering. From a review of the record, the jury's verdict was manifestly excessive. There is no warrant for an award greater than $1,250.00.

The entry will be,

> *Motion for new trial granted unless within 30 days from filing of mandate plaintiff remits all of the verdict in excess of $1,250. If remittitur is filed, appeal denied.*