STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. CV-11-545
                                                  TDW- CUM - 5/23/2013

NORMAND J. COTE,                    STATE OF MAINE
                                Cumberland ss. Clerk's Office
          Plaintiff

                                     MAY 2_ 2013
v.                                                            ORDER
                                   RECEIVED

M. BLAIS PROPERTIES LLC, et al,

          Defendants


        Before the court is a motion for summary judgment by defendants M. Blais

Properties LLC, M. Blais Builders Corporation, Maurice Blais, and Jocelyne Blais.

        Plaintiff Normand Cote was a tenant in an apartment building that is owned by

defendants Maurice and Jocelyne Blais and managed by M. Blais Properties LLC (Blais

Properties). The building was constructed by another Blais company, M. Blais Builders

Corporation (Blais Builders). Cote alleges that he was seriously injured in October 2009

when he fell after a handrail in the stairway of the building pulled out of the wall.

        Defendants have raised three arguments in moving for summary judgment. The

first is that any negligence in the installation of the handrail that occurred during the

construction of the building was the responsibility of an independent contractor. The

second is that there is no evidence prior to the accident that would have put Maurice

Blais, Jocelyne Blais, or Blais Properties on notice of any dangerous condition with

respect to the handrail. The third is that there is insufficient evidence to avoid summary

judgment on the issue of causation.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case, there is one procedural issue at the outset. In response to the statement of additional facts submitted by Cote as part of his response to defendants' motion, see M.R.Civ.P. 56(h)(2), defendants submitted a reply statement of material facts pursuant to Rule 56(h)(3). Defendants' reply statement contained a number of objections to the admissibility of evidence cited by Cote in his statement of additional material facts and to the factual support for assertions made by Cote in his statement of additional material facts.

As permitted by Rule 56(i)(2) counsel for Cote filed a response to defendants' objections. However, counsel for Cote simultaneously filed a seven page sur-reply memorandum responding to the arguments in defendants' reply memo.[1] Defendants

---

[1] The memorandum is entitled "Plaintiff Normand A. Cote's Response to Defendants' Summary Judgment Reply Pursuant to M.R.Civ.P. 56(i)(2)" and is dated March 31, 2012.

2

have objected to this latter submission, which is not permitted by Rule 56 and for which counsel did not seek leave of court.

The sur-reply memorandum shall be stricken from the record. Summary judgment practice is cumbersome enough without unauthorized submissions by counsel seeking to have the last word.

Liability of Blais Builders

The summary judgment record establishes that installation of the handrail was performed by an independent contractor when the building was constructed in 1993 or 1994. Defendant's Statement of Material Facts (SMF) dated February 5, 2013 ¶¶ 8, 10. Although Cote states that he "reserves the right" to prove that the installer was an employee,[2] Cote has not offered evidence generating a disputed issue for trial as to whether the installer was an employee or as to whether Blais Builders exercised control over the details of the installer's work. Moreover, Cote and his expert have elsewhere essentially conceded that the installer was an independent contractor. See Plaintiff's SMF dated February 26, 2013 (response to ¶ 59); Dodge Dep. 93.

The remaining question raised on the instant motion is whether Blais Builders can be held liable for alleged negligence on the part of an independent contractor. On this issue Blais Builders relies on the Law Court's adherence to the principle that employers are not generally liable for the negligence of independent contractors. E.g., Rainey v. Langen, 2010 ME 56 ¶ 14, 998 A.2d 342; Legassie v. Bangor Publishing Co., 1999 ME 180 ¶ 5, 741 A.2d 442. Cote relies on the list of exceptions to that principle that are set forth in the Restatement (Second) of Torts.

---

[2] See Plaintiff's Response to Defendants' Motion for Summary Judgment dated February 26, 2013 at 3.

3

Cote primarily relies on Restatement section 410 (negligent orders or directions given by employer), section 412 (failure to inspect repair or maintenance work), section 421 (liability for maintenance and repair work), section 422 (liability of possessors of land once they have resumed possession from contractor), and section 424 (statutes or regulations requiring specified safeguards or precautions). He also cites, at least in passing, Restatement sections 413, 414, and 416.

As far as the court can tell, the Law Court has never adopted the Restatement sections on which Cote primarily relies and has expressed reservations with respect to two of the other sections cited by Cote. See Dexter v. Town of Norway, 1998 ME 195 ¶¶ 9-10, 715 A.2d 169 ("we are far less certain as to whether and under what circumstances we would recognize" the principles set forth in Restatement sections 413 and 416). Moreover, even if they were to be adopted in Maine, most of the exceptions relied upon by Cote do not appear to be applicable in the instant case.

Restatement sections 412 and 421 thus expressly apply to persons who are under a duty to "maintain" premises in a reasonably safe condition and who contract out repair work. Cote offers no authority for the proposition that a construction company which built a building in 1993 or 1994 has a continuing duty to maintain that building in a safe condition. The remaining defendants do have such a duty, as discussed below, but that duty does not extend to Blais Builders just because Blais Builders is owned by Maurice and Jocelyne Blais.[3]

Similarly, Restatement section 422 applies to a "possessor" of land, but Blais Builders was not the possessor of the building at the time Cote was injured. Restatement section 410 states that an employer of an independent contractor who

---

[3] Cote has not contended – and has offered no evidence – that the corporate form of Blais Builders should be disregarded.

4

negligently gives orders and directions to the independent contractor is liable as if the contractor's acts or omissions were the employer's own. On this record, however, the undisputed evidence is that the independent contractor was instructed to install the handrail safely and in compliance with all municipal and industry requirements.[4]

That leaves, however, Restatement section 424 which provides as follows:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

On this issue Cote has demonstrated the existence of a disputed issue for trial on whether the handrail as installed violated building code specifications designed for the safety of persons using the stairwell.[5]

While the court has some doubt as to whether a company who constructs a building but does not own or manage the building has a general duty to subsequent tenants, building code requirements designed to safeguard building occupants represent legal duties that have already been imposed and the court cannot see any reason why those should not be enforceable by damage suits on behalf of persons the code requirements are designed to protect.

---

[4] The evidence is scant on this issue because the installation occurred in 1993 or 1994 and the installer has since died. However, the court does not find that Cote's attempts to dispute defendant's evidence as to the instructions given, based on supposition and conjecture from Cote's safety expert, David Dodge, is sufficient to create a disputed issue for trial on this issue, even assuming that Maine would adopt section 410 of the Restatement. Moreover, the court is also not convinced that if Blais Builders had installed the handrail itself, the Law Court would adopt the principle that a company which constructs a building (as opposed to the owner of that building) owes a duty to all of the tenants who subsequently occupy the building and may be injured on the premises.

[5] There may be an issue as to whether the building code specifications relied upon by Cote were in effect in Hallowell in 1993 or 1994. For purposes of summary judgment inferences on that issue must be drawn in Cote's favor. At trial, however, it will be Cote's burden to show that any Building Code provisions upon which he relies were in effect at the relevant time.

Moreover, since a building contractor is already ultimately responsible for compliance with building code requirements, the court predicts that the Law Court would adopt section 424 of the Restatement and would not shield the building contractor from liability for a building code violation resulting from work performed by an independent subcontractor. The court concludes that Blais Builders is not entitled to summary judgment on this issue.

Blais Builders may have other legal defenses, including the statute of limitations. In his summary judgment papers Cote argues that his claim is not time-barred against Blais Builders based on the "continuing tort" doctrine. The court expresses no opinion on that issue because Blais Builders has not raised or relied on the statute of limitations in its pending motion for summary judgment.

Liability of Blais Properties, Maurice Blais, and Jocelyne Blais for Dangerous Condition in Stairwell

With respect to Cote's claim against Blais Properties, Maurice Blais, and Jocelyne Blais (collectively the "landlord defendants"), the court concludes at the outset that there is no evidence that any of those defendants were on notice of the existence of the allegedly dangerous condition of the handrail prior to Cote's injury. Plaintiff's safety expert, David Dodge, has surmised that certain of the handrails may have moved with a wiggle, but this was based on an inspection he conducted in April 2012. See Dodge Dep. 95-96. He acknowledged he had no factual information that the handrails wiggled prior to Cote's fall. Id. 96. Accepting that Dodge observed some wiggle in April 2012, that observation more than two years after the accident is not admissible evidence as to the condition of the handrails prior to Cote's injury or as evidence that the landlord defendants should have been on notice that any handrails were unstable.

6

Cote himself testified that he regularly used the handrails in the building, never noticed any problems or looseness, and never made any complaints about the handrails. Defendants' SMF ¶¶ 32-33 (admitted). It is also undisputed that from the completion of construction until the date of Cote's injury, there were never any complaints made about any handrails anywhere in the apartment complex. Defendants' SMF ¶ 25 (admitted).

However, while the liability of possessors of land to invitees depends on whether the possessor knew or had reason to know of the existence of a dangerous condition on the premises, see Restatement (Second) of Torts § 342, a different rule appears to apply to a landlord's obligation to tenants with respect to dangerous conditions in common areas under the landlord's control. In that case liability depends, not on whether the landlord had reason to know of the condition, but on whether the Landlord by the exercise of reasonable care could have discovered the condition. Restatement (Second) of Torts § 360. See also Restatement (Second) of Property, Landlord and Tenant § 17.3.

On several occasions the Law Court has stated that

> [i]f landlords retain control over common areas in the rental property, they can consequently be held liable for dangerous conditions in those areas.

Stewart v. Aldrich, 2002 ME 16 ¶ 13, 78 A.2d 603. Accord, Nichols v. Marsden, 483 A.2d 341, 343 (Me. 1984) ("A landlord also may be found liable in negligence for injuries caused by defective conditions in common areas of a rented building over which he is deemed to have control"). On those occasions the Law Court did not add a qualifier that liability would only exist if the landlord knew or had reason to know of the dangerous condition.

While the above statements in the Stewart and Nichols decisions are arguably dicta, the Law Court has in fact applied the above principle in upholding verdicts

7

against landlords in Anderson v. Marston, 161 Me. 378, 213 A.2d 48 (1965), and Horr v. Jones, 157 Me. 1, 170 A.2d 144 (1961). In Anderson the evidence demonstrated that the landlord had reason to know of the dangerous condition, but the court did not state that reason to know was required. See 161 Me. at 381-82, 213 A.2d at 49-50. In Horr liability was premised on the landlord's negligence in failing to inspect the porch even though "[t]here had been no visible warning" of the dangerous condition. See 157 Me. at 3, 8, 213 A.2d at 145, 147.

The issue of whether the landlord defendants in this case could by the exercise of reasonable care have discovered any dangerous condition that may have existed in the handrails presents a disputed issue for trial in this case.

Causation

The defendants' final argument, premised on Addy v. Jenkins Inc, 2009 ME 46, 969 A.2d 935, is that because no one observed Cote's fall or the separation of the handrail from the stairwell wall, there is insufficient evidence of causation. Cote's testimony is that he has no recollection of his fall or the circumstances that led to the fall. Defendants' SMF ¶ 57.[6] Defendants argue that – with Cote's history of unprovoked falls, see Defendants' SMF ¶ 38 (admitted) – there is no basis on which to find that his fall was caused by the separation of the handrail from the wall.[7]

---

[6] Counsel for Cote counters with testimony from Leo Lessard that Cote told Lessard at the hospital the following day that he grabbed the handrail and it came out of the wall. Plaintiff's SMF ¶ 57; see L. Lessard Dep. 25-26. However, Lessard's testimony as to what Cote later stated is hearsay that is not admissible on summary judgment or at trial and is not saved by the present sense impression or excited utterance exceptions.

[7] There are several other conceivable alternative mechanisms of injury, some more tenuous than others. One is that Cote fell at a different location, and it is only a coincidence that the handrail separated from the wall around the same time. Defendants have not advanced that argument. A second is that Cote fell on his own and hit the handrail, which then separated from the wall, partially breaking his fall. Defendants appear to have picked this as their primary alternative

In the court's view, the summary judgment record, construed in the light most favorable to plaintiff, contains sufficient circumstantial evidence – including the handrail separated from the wall, the presence on the landing of possessions that Cote had kept in the basement, the nature of the injuries that Cote suffered – from which a fact-finder at trial could arrive at an inference that it is more likely than not that Cote fell because he was holding the handrail when it pulled out of the wall. The circumstantial evidence in this case, particularly the handrail separated from the wall in close proximity to Cote's belongings, distinguishes this case from Addy.

Defendants' motion for summary judgment on the issue of causation is denied.

The entry shall be:

Defendants' motion for summary judgment is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May 23, 2013

Thomas D. Warren
Justice, Superior Court

---

hypothesis. A third possible alternative is that Cote fell on his own near the handrail and pulled the handrail out of the wall trying to stand up. As discussed in the accompanying text, regardless of the relative merits of any alternative theories, there is sufficient evidence to proceed to trial on plaintiff's theory of causation. Whether that theory will prevail once all the facts and circumstances are developed at trial remains to be decided.

CUMBERLAND COUNTY'S CLERK'S OFFICE
CIVIL-REAL ESTATE DIVISION
205 NEWBURY ST
PO BOX 412
PORTLAND ME 04112


MICHAEL BIGOS ESQ
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME 04243-0961

CUMBERLAND COUNTY'S CLERK'S OFFICE
CIVIL-REAL ESTATE DIVISION
205 NEWBURY ST
PO BOX 412
PORTLAND ME 04112

H PETER DEL BIANCO ESQ
LAMBERT COFFIN
PO BOX 15215
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-545
TDW–CUM – 11/17/2013

)
NORMAND J. COTE,                           )
                                           )
            Plaintiff,                     )                    ORDER
                                           )
      v.                                   )
                                           )
                                           )          **STATE OF MAINE**
                                           )     **Cumberland, ss, Clerk's Office**
M. BLAIS PROPERTIES LLC, et al,            )
                                           )             **NOV 12 2013**
            Defendants                     )
                                                        **RECEIVED**

A jury-waived trial in the above captioned action was held on July 31 – August 2, 2013 and August 7 and 8, 2013. After the trial the parties filed post-trial memoranda, and final briefing was completed on September 9, 2013.

The court finds as follows:

The October 10, 2009 Fall

1. Plaintiff Normand Cote was injured on October 10, 2009 in a fall in the stairwell of the multi-unit apartment building where he resided at 3 Stickney Terrace in Hallowell, Maine.

2. Mr. Cote, who was 82 years old on October 10, 2009, had been living independently but was about to move to an assisted living apartment at Mount St. Joseph in Waterville, Maine.

3. In October 2009 Mr. Cote's wife was already at Mount St. Joseph's. She had Alzheimer's and was in a separate area of Mount St. Joseph's that offered skilled nursing care.

4. Mr. Cote visited his wife in the Mount St. Joseph's facility as often as twice a day even though at times she no longer recognized him.

5. On October 10, 2009, Mr. Cote's sister, his brother in law and nephew were at 3 Stickney Terrace helping Mr. Cote pack in preparation for his move.

6. After loading some of Mr. Cote's possessions in their vehicle, Mr. Cote's brother in law and nephew found Mr. Cote sitting at the top of the steps leading down to the basement storage area. Mr. Cote looked dazed and in pain and he appeared to have a bump on the side of his forehead. Thereafter, he was taken in an ambulance to Maine General Hospital in Augusta, Maine and later that evening was transported to Maine Medical Center in Portland, Maine.

7. At Maine Medical Center Mr. Cote was diagnosed as having what the neurosurgeon described as a mild brain injury, along with a fracture at the base of his skull, a fracture of his right cervical vertebrae (C 1-2), and a fracture of one of the metacarpal bones in his right hand.[1] The fracture at the base of his skull and the fracture at C 1-2 were caused by an impact to the upper left part of Mr. Cote's forehead that compressed his skull against the neck.

8. Notwithstanding the fractures at the base of his skull and at C 1-2, Mr. Cote had no neurological symptoms. After those fractures were evaluated, the only significant treatment Mr. Cote received for the fractures were instructions to wear an Aspen collar for several months. The major issue with respect to Mr. Cote's injuries concerns the effect of the mild traumatic brain injury that he received as a result of his fall.

---

[1] Mr. Cote also had a fracture at the tip of the C-1 transverse process. This was not found to have any functional or structural consequence. Florman Dep. 15 (admitted at trial by agreement).

2

9. With respect to the specifics of his fall, Mr. Cote has no memory, and no one observed him fall. However, Mr. Cote was found at the top of a flight of stairs which led down to a landing halfway to the basement storage area. Lying on the landing or on the stairs just above the landing was one of the handrails from the landing, which had become detached from the wall. The appearance of the wall and the screws protruding from the handrail suggested that one end of the handrail had been twisted as it pulled out. Also on the landing were two luggage items that Cote had kept in the basement. The court concludes that the handrail was pulled out of the wall by Mr. Cote.

10. Prior to Mr. Cote's fall, neither the landlord nor anyone else using the handrail or stairs had ever observed or been made aware that the handrail was either loose or that it was not firmly attached to the wall. Although the handrail had not been fastened to the wall in accordance with the load requirements in the building code, the handrail would not have detached from the wall unless subjected to substantially more force than would normally be applied by a person tugging on the handrail or using the handrail to steady himself.

11. Mr. Cote had become increasingly unsteady in the year and a half prior to October 10, 2009. Based on his physician's reports, Mr. Cote had fallen up to 18 times as of March 10, 2009.

12. The exact mechanism of Mr. Cote's head injury is unknown. Whether he struck the top of his head on the handrail itself or whether he struck his head on some other surface (such as one of the protruding corners on the inside of the turn on the landing[2]) cannot be determined. Because significant force had to be applied to pull the handrail out of the wall, the court determines that it is less likely that Mr. Cote

---

[2] See Ex. 17 (photo of landing from above).

originally injured himself while falling and subsequently detached the handrail while attempting to stand up. It is more likely than not that the handrail was wrenched off when Mr. Cote lost his balance and grabbed for the handrail to prevent himself from falling. Accordingly, it is more likely than not that the failure of the handrail was a legal cause of Mr. Cote's head injury.

Alleged Negligence on the Part of Defendants

13. The buildings at Stickney Terrace, including 3 Stickney Terrace, are owned by defendants Maurice and Jocelyne Blais. Three Stickney Terrace was built by defendant M. Blais Builders Corporation (Blais Builders), a company owned by Maurice Blais, in 1993 or 1994.

14. The handrails in the stairwells at 3 Stickney Terrace were installed by an independent contractor, Jerry Blaisdell, who has since died.

15. It is not disputed by the defendants that the screws used to fasten the particular handrail that detached from the wall on October 10, 2009 were too short. Both Kevin Marcoux, who performed maintenance at Stickney Terrace, and Maurice Blais readily acknowledged the problem when they saw the screws after the handrail had been pulled out of the wall. However, Maurice Blais and Blais Builders played no role in choosing the method by which Jerry Blaisdell attached the handrail. The only instructions given to Blaisdell by Maurice Blais were to attach the handrails securely and to follow the building code.

16. According to the BOCA code in effect when 3 Stickney Terrace was built, handrails were to be designed and constructed for a concentrated load of 200 lbs. The screws holding the handrail that detached only penetrated approximately ¼ inch into the studs in the wall. Depending on the manner and angle of the force applied to the

4

handrail, the handrail was only able to withstand a force of somewhere between 60 to 100 lbs.[3]

17. Both plaintiff and defendants offered expert testimony as to the amount of force necessary to dislodge the handrail and the manner in which force necessary to dislodge the handrail may have been applied. Except to the extent that the testimony of plaintiff's expert, David Dodge, is consistent with the court's findings, the court did not credit Mr. Dodge's testimony. His testimony and opinions were too often influenced by his desire to assist plaintiff's case and his assumption of the role of an advocate rather than an unbiased expert and witness. On the other hand, the court did not find the expert opinions offered by defendant's expert, James Thibodeau – particularly his theory that Mr. Cote dislodged the handrail when his head struck it as he fell down – to be convincing.

18. None of the defendants had any reason to know or suspect that the handrail had been inadequately fastened when it was installed in 1993 or 1994. As of October 10, 2009 no complaint had ever been received with the respect to the handrail that detached or any other handrail in the various Stickney Terrace buildings. Before the handrail detached on October 10, 2009, there is no evidence that the handrail was loose. None of the witnesses who testified had observed any problems in using handrails at 3 Stickney Terrace.

19. In October 2009 3 Stickney Terrace and other Stickney Terrace buildings were managed by defendant M. Blais Properties LLC, another company owned by Maurice Blais. The primary person charged with maintenance at the Stickney Terrace buildings

---

[3] Plaintiff's safety expert, David Dodge, estimated that two screws at one end of the handrail fastened ¼ inch into the stud would only be able to withstand a load of 58.5 lbs., but this figure is likely too low because it did not take into account that the handrail was also fastened by two screws at the other end.

was Kevin Marcoux, who was an employee of Blais Builders. Mr. Marcoux and Maurice Blais routinely inspected the stairwells and common areas of the Stickney Terrace Buildings and were diligent in performing maintenance and repairs where they observed any problems or when issues were brought to their attention.

20. None of the defendants knew or in the exercise of reasonable care should have known that the handrail was inadequately attached. When subjected to ordinary usage, the handrail remained solidly attached. Kevin Marcoux and Maurice Blais could not have discovered the unsafe condition of the handrail through the exercise of reasonable care because the defect in the way the handrail was attached was not apparent when the handrails were inspected.

21. This is true even though, prior to Mr. Cote's fall, the defendants did not subject the handrails at Stickney Terrace to load testing. Load testing would have involved the application of substantial force to determine whether the handrails would withstand a load of up to 200 lbs. No expert testimony was offered that the standard of care for owners of multi-unit apartments is to subject their handrails to load testing. If load testing were required, landlords would have to periodically tear out their handrails in order to determine their safety.[4] Absent some indication of an unsafe condition, this goes beyond what is required in the exercise of reasonable care.

22. The court does not find that the evidence supports the defendant's argument that comparative negligence is applicable here. Mr. Cote had become prone to falling during the preceding year, but he was not negligent in utilizing the stairs to the

---

[4] To reattach the handrails, the building owners would then have to reconstruct the wall and the studs to which the handrails were attached. There would then be a question whether the reattachment was sufficient.

6

basement storage area on October 10, 2009, nor can he be found negligent for losing his balance.

23. To summarize the relationship of the various defendants to 3 Stickney Terrace, the building was built by Blais Builders, which employed an independent contractor to install the handrails. At all relevant times Maurice Blais was the sole shareholder and principal officer of Blais Builders. An employee of Blais Builders (Kevin Marcoux) was the principal person responsible for maintenance at 3 Stickney Terrace. Maurice Blais and his wife Jocelyne Blais are the owners of 3 Stickney Terrace, and the Stickney Terrace buildings were managed in October 2009 by M. Blais Properties LLC, which is also solely owned by Maurice Blais.

24. There was no evidence of any intermingling of assets between Maurice and Jocelyne Blais, Blais Builders, and/or M. Blais Properties LLC. There was no evidence of any nonobservance of corporate formalities, of the insolvency of any entity, of any thin capitalization or nonpayment of dividends, or of any misuse of corporate assets. There was no evidence that the corporate form was misused for the benefit of Maurice Blais or Jocelyne Blais, and no evidence that the corporate form was used in any way to promote fraud or other wrongdoing.


Mr. Cote's Injuries and Damages

25. Prior to his fall, Normand Cote's relatives had not noticed any significant recent decline in his faculties. As noted above, he had fallen multiple times in the prior year but his relatives were not aware of the severity of that problem.

26. Mr. Cote had had four recent automobile accidents during the months prior to his fall. During a doctor's visit on October 2, 2009 – eight days before the fall which is the subject of this lawsuit – Mr. Cote's physician advised Mr., Cote that he should no

7

longer be driving. Mr. Cote said that he was going to hire someone to drive him in the future. As a result, the physician did not take the step of reporting to the Department of Motor Vehicles that Mr. Cote should not longer drive – a step that the physician otherwise would have taken.

27. Prior to October 10, 2009 Mr. Cote had also been experiencing vision problems, including diplopia (double vision).

28. At the time of Mr. Cote's October 2, 2009 visit to his physician, his physician described Mr. Cote as definitely slowing down but still mentally clear.

29. The staff at Mount St. Joseph's, where Mr. Cote visited his wife in the skilled nursing care unit, had noticed that Mr. Cote was exhibiting some beginning signs of dementia during the year prior to his fall. See Ex. 1A (Mt. St. J. 0035).

30. When admitted to Mount St. Joseph after his release from Maine Medical Center, one of Mr. Cote's diagnoses was vascular dementia – a condition that existed independently of the injuries caused by his fall.

31. As noted above, upon admission to Maine Medical Center on the night after his fall, Mr. Cote had been diagnosed with a fracture at the base of the skull[5] and a right C1-2 vertebral body fracture. Notwithstanding these injuries, Dr. Florman, the neurosurgeon who examined Mr. Cote at Maine Medical Center the day after his fall, found Mr. Cote to be neurologically intact at that time.

32. Mr. Cote was released from Maine Medical Center on October 14, 2006 and was thereafter treated in the skilled nursing center at Mount St. Joseph's, where his wife was, until late November 2009. This required a level of care and expense above that

---

[5] The medical records variously describe that fracture as an occipital condyle fracture and/or a fracture of the clivus. Dr. Florman described the injury as a fracture in the bone at the base of the skull caused by an impact to the top of Mr. Cote's forehead that compressed the base of the skull against his neck. Florman Dep. 15-18.

8

which he would have incurred if he had entered the assisted living facility at Mount St. Josephs as he had planned. At Mount St Josephs Mr. Cote was still experiencing significant pain from his fall.

33. Approximately a month after Mr. Cote's fall, while Mr. Cote was at Mount St. Josephs, his wife died – an event that caused Mr. Cote considerable anguish.

34. Mr. Cote was discharged from Mount St. Joseph in late November 2009 and thereafter went to St. Joseph's Manor in Portland, where he would be closer to other family members now that his wife had died. The Mount St. Joseph's discharge notes state that Mr. Cote was being discharged to an assisted living facility, but records at St. Joseph's Manor indicate that he continued to receive skilled nursing care at that facility at least through the first few months of 2010.

35. By the time he was discharged to St. Josephs Manor, Mr. Cote was no longer experiencing significant pain. See Ex. 1A – Flor0001 ("minimal neck discomfort").

36. It appears from the medical records that during the period from March 2010 to the end of February 2011 Mr. Cote required a lower level of care during his stay at St. Joseph's Manor than he did during the three months after his arrival. Mr. Cote's brothers Roland and Raymond testified that during this period Mr. Cote's brothers would pick him up at St. Joseph's Manor and take him out to lunch one or two times per month. In February 2011 a Mercy Hospital record described Mr. Cote as "in assisted living currently at St. Joseph's." Ex. 1B (StJManor 0417, 0419).

37. Except for some minor loss of range of motion, Mr. Cote's occipital condyle fracture and his C1-C2 vertebral fracture did not result in any lasting damage. In mid December 2009 Mr. Cote was examined by Dr. Florman, who advised Mr. Cote that he could discontinue use of an Aspen collar at that time.

9

38. The most serious result of Mr. Cote's October 10, 2009 fall is that it resulted in what Dr. Florman described as a "mild underlying brain injury" that contributed to a decline in Mr. Cote's cognitive functions. The court finds from the record and other evidence that, although there was evidence of decline and compromise of Mr. Cote's functioning prior to his October 10, 2009 fall, his head injury on October 10, 2009 resulted in an accelerated decline.

39. After the October 10, 2009 fall Mr. Cote required a walker and in some cases a wheelchair to get around. His brother Raymond recalled that at the beginning of Mr. Cote's stay at St. Josephs Manor, Mr. Cote could walk at least short distances and with the assistance of a walker but as time went on he was confined to a wheelchair more and more.

40. The nursing staff at Mount St. Josephs and at St. Josephs Manor noted cognitive decline and cognitive and linguistic impairments. Mr. Cote was also considerably less animated and more subject to confusion.

41. On February 18, 2011, while at St. Josephs Manor, Mr. Cote fell once again, suffered another head injury, and was taken to Mercy Hospital. This was not the first fall Mr. Cote had suffered at St. Joseph's Manor,[6] but on this occasion Mr. Cote was diagnosed with a subdural hematoma and a subarachnoid hemorrhage resulting, according to the medical records, in a "traumatic brain injury." Ex. 1A (Dinn0010).

42. The Mercy Hospital records state that it was decided at that time that Mr. Cote needed a higher level of care and that he should be discharged to skilled nursing care rather than assisted living.[7]

---

[6] See Dr. Florman's report of April 15, 2010. Ex. 1A (Flor0002).

[7] See Ex. 1B: StJManor 0416 – "discharged to "SNF" (skilled nursing facility); StJManor 0419 (agreement that patient needs higher level of care).

10

43. At closing argument counsel for plaintiff stated that plaintiff was not claiming for the February 2011 fall. This was consistent with the absence of any evidence that Mr. Cote's October 10, 2009 injuries caused or contributed to his fall in February 2011. Because the February 2011 fall triggered a return to skilled nursing care, the court finds that defendants have met their burden of showing that the increased level of medical care that Mr. Cote required from February 2011 onward, his loss of the ability to live independently or in assisted living from February 2011 onward, and his treatment expenses from that date forward were not the result of injuries caused or aggravated by any fault on the part of the defendants. Lovely v. Allstate Insurance Co., 658 A.2d 1091, 1092 (Me. 1995). It would be unrealistic, to say the least, to conclude that an 82 year old man with a history of frequent falls and the beginning signs of dementia prior to October 10, 2009 would have been able to live independently in an assisted living facility for the remainder of his life.

44. From the time of his fall in October 2009, Mr. Cote's relatives observed what they characterized as a marked deterioration in his condition, particularly as time went on. The court finds that Mr. Cote was in a significantly worse condition immediately after the October 2009 fall than before but that his condition leveled off and improved between February 2010 and February 2011. Since his February 2011 fall, Mr. Cote's condition has steadily worsened. By the time of trial, Mr. Cote was in a significant decline and was living at a different skilled nursing facility. His deposition – at which he was only able to testify for a half hour at a time – was admitted in the evidence, but he was unable to attend trial.

11

45. The court finds that the medical expenses incurred by Mr. Cote and caused by his October 10, 2009 fall were $153,719.87.[8] As a result of his injury, Mr. Cote also incurred $ 4,470 in expenses for bookkeeping.

46. Mr. Cote experienced considerable pain and suffering in the immediate aftermath of his fall. More importantly, his cognitive impairment and the decline in his quality of life were accelerated by the injuries he sustained on October 10, 2009. The court finds that Mr. Cote's damages for past, present and future pain, suffering, loss of enjoyment of life, and loss of quality of life caused or aggravated by the October 10, 2009 fall are $ 185,000.

47. The court does not find that Mr. Cote failed to mitigate his damages.

Conclusions of Law

Based on the above findings, the court reaches the following conclusions of law:

48. Although adequate for ordinary use, the handrail was inadequate when Mr. Cote lost his balance and grabbed the handrail, subjecting it to a sudden and significant load in excess of 60 lbs. Given the requirements of the building code and the need for handrails that can hold people in the process of falling, the handrail was negligently installed in 1994.

---

[8] This figure is reached by subtracting the cost that Mr. Cote would have incurred in moving to assisted living at Mount St. Joseph (as he had planned to do before his fall) from the cost of the medical expenses and care that he actually received from October 10, 2009 up through the end of February 2011. This is consistent with the approach used by Barbara Bate, the life care planner called as an expert by plaintiff. There is one issue with her calculation because the figure she used for the costs that Mr. Cote would have incurred if he had not fallen was based on the rate for an "independent living apartment" at Mount St. Joseph. The testimony was that Mr. Cote was planning to move to assisted living at Mount St. Joseph, and it is therefore unclear whether Ms. Bate used the correct rate. The court has given plaintiff the benefit of the doubt on this issue because there was testimony that there were various levels of assisted living at the Mount St. Joseph facility.

12

49. Although the handrail was installed by an independent contractor, the court adheres to its ruling on the motion for summary judgment that, under Restatement (Second) Torts § 424, Blais Builders would be liable for negligence on the part of the independent contractor in the installation of the handrail. See May 23, 2013 order at 5.

50. Although the negligent act or omission occurred no later than 1994, the six year statue of limitations had not expired on October 10, 2009. This is because, with certain exceptions,[9] a cause of action in tort does not accrue until "the point at which a wrongful act produces an injury". E.g., Dugan v. Martel, 588 A.2d 744, 746 (Me. 1991). In this case the wrongful act occurred in 1994 but did not produce an injury until October 10, 2009.

51. Assuming that Blais Builders owed a duty to occupants of the building that it constructed, Blais Builders would therefore be liable for Mr. Cote's damages without regard to whether any "continuing tort" doctrine is applicable here.

52. If the court had to reach the question of whether a "continuing tort" doctrine is applicable in this case, it would rule against the plaintiff on that issue. As the court has found above, none of the defendants were negligent in failing to discover the unsafe condition posed by the inadequately installed handrails. In cases where any kind of continuing tort theory has been proposed, the facts involved either (1) negligent actions that may have begun outside the limitation period but allegedly continued within the limitations period or (2) an alleged infliction of injury that began outside the limitations period but continued during the limitation period. E.g., McLaughlin v. Superintending School Committee, 2003 ME 114 ¶¶ 21, 23 n.6, 838 A.2d 782. Those situations are not presented here.

---

[9] One exception involves the statue of limitations in medical malpractice actions, which runs from "the date of the act or omission giving rise to the injury." 24 M.R.S. § 2902.

13

53. On its face, a ruling that Mr. Cote is not time-barred in pursuing a claim against Blais Builders based on negligent installation of the handrail in 1994 appears to be inconsistent with the Law Court's ruling in Dunelawn Owners' Assn. v. Gendreau, 2000 ME 94, 750 A.2d 591. The Dunelawn case, however, is distinguishable. The Law Court found in Dunelawn that the injury occurred when the builder completed construction and sold the unit because the injury for statute of limitations purposes consisted of the injury suffered by the condominium association and by the purchasers of one of the condominium units when they received a condominium building and unit that contained material defects. 2000 ME 94 ¶ 12. This was true even though the condominium association and the unit owners were not aware that they had been injured at that time. In this case, however, Mr. Cote was not injured at the time construction was completed or the building was conveyed to the owner; Mr. Cote was not injured until October 10, 2009.[10]

54. The court experiences considerable unease in suggesting that a statute of limitations defense is not applicable when the act or omission took place 15 years before the injury. However, other states have addressed this issue by enacting "statutes of repose" that bar claims after a specified time from the allegedly negligent act or omission even if no injury has yet been incurred. See, e.g., Iowa Code § 614.1(11).[11] Maine does not have an applicable statute of repose.

55. The above discussion assumes that Blais Builders, when it constructed 3 Stickney Terrace in 1993-94, owed a duty to subsequent occupants of the building such as Mr. Cote, at least with respect to negligence involving building code violations. On

[10] Mr. Cote did not move into 3 Stickney Terrace until April 2001, already more than six years after the handrail was installed.

[11] Statutes of repose terminate any right of action after a specified time period has elapsed, regardless of whether there has been an injury. Bob McKinness Excavating & Grading Inc. v. Morton, 507 N.W.2d 405, 408 (Iowa 1993).

14

that issue the court adheres to its ruling on the motion for summary judgment that legal duties imposed by building code requirements designed to safeguard building occupants should be enforceable by damage suits on behalf of persons the code requirements are designed to protect. May 23, 2013 order at 5. The court therefore finds that Blais Builders is liable to Normand Cote in this action.

56. At the same time, based on the facts set forth above, the court finds that defendants Maurice and Jocelyn Blais and defendant M. Blais Properties LLC are not liable.

57. Specifically, as the owners of 3 Stickney Terrace, Maurice Blais and Jocelyn Blais would be liable for a dangerous condition in the common areas of their building if they could have discovered the condition by the exercise of reasonable care. Restatement (Second) Torts § 360; Restatement (Second) Property, Landlord and Tenant § 17.3 [12]

58. As noted in the court's summary judgment opinion, there is dicta in certain Law Court opinions that might suggest that landlords would be strictly liable for unsafe conditions in common areas. See May 23, 2013 order at 7-8. However, the court concludes that those statements – none of which actually mentioned strict liability – were not intended as a complete statement of the circumstances under which property owners are liable for unsafe conditions in common areas. In the only cases that have directly addressed this issue, the property owner was either aware of the dangerous condition, Anderson v. Marston, 161 Me. 378, 381-82, 213 A. 2d 48, 49-50 (1965), or there was an express ruling that the jury was "within permissible bounds in deciding that in the exercise of reasonable care the defendants could have and should have discovered

---

[12] The same would be true of M. Blais Properties, LLC to the extent that the owners delegated the functions of maintenance and repair to that entity.

15

by simple and plain inspection the condition and risk involved." Horr v. Jones, 157 Me. 1, 8, 170 A.2d 144, 147 (1961) (emphasis added). The court therefore concludes that Restatement (Second) Torts § 360 states the applicable standard for the liability of Maurice and Jocelyn Blais and M. Blais Properties LLC as landlords in this case.

59. Plaintiff argues that building code violations, even latent and unknown code violations, are applicable to building owners as well as builders and that therefore the remaining defendants are equally liable with Blais Builders for the inadequately installed handrail. To the extent that building code requirements are applicable to building owners, this does not alter the principle that there is no doctrine of strict liability applicable to property owners. A property owner's liability is based on negligence. While violations of safety regulations may be evidence of negligence, they are not negligence per se and must be evaluated, along with all the other evidence in the case, in determining whether a defendant was negligent. See Alexander, Maine Jury Instruction Manual § 7-69 (2013 ed.). In this case, as noted above, Maurice Blais, Jocelyne Blais, and M. Blais Properties LLC had no knowledge of the building code violation and could not have discovered the weakness of the handrail through the exercise of reasonable care. The court finds that they were not negligent under the circumstances of this case.

60. The court also rejects the plaintiff's suggestion that Maurice Blais should be held personally liable for the negligent installation of the handrail when (1) he had no knowledge of the improper installation; (2) he had instructed that handrails be securely fastened and installed in compliance with the Building Code; (3) the handrail was installed by an independent contractor; and (4) the independent contractor was hired by Blais Builders, not by Maurice Bias personally.

16

61. In his post trial submission plaintiff contended – for the first time – that the corporate form of Blais Builders should be disregarded. That claim was not asserted in plaintiff's complaint. Although plaintiff's May 22, 2013 trial brief argued that that the responsibilities of Blais Builders and M. Blais Properties LLC were intermingled, the trial brief did not contend that the corporate veil of Blais Builders should be pierced to hold Maurice Blais personally liable. In the court's view it is too late to raise this argument after trial.

62. In any event, plaintiff did not prove at trial that the corporate form of Blais Builders had been misused. Just because Maurice Blais is the sole shareholder and principal officer of Blais Builders does not mean he is not entitled to avail himself of the protection of conducting business in corporate form. As noted above, no proof was offered of any misuse of corporate form or corporate assets. See Johnson v. Exclusive Properties Unlimited, 1998 ME 244 ¶ 7, 720 A.2d 568. The court does not find that Blais Builders was the alter ego of Maurice Blais for purposes of imposing personal liability.

The entry shall be:

Judgment shall be entered in favor of plaintiff and against defendant M. Blais Builders Corporation in the amount of $ 343,189.87.

If plaintiff served a notice of claim, plaintiff shall within 10 days submit that notice along with proof as to when it was served so that the prejudgment interest rate may be determined. Otherwise prejudgment interest shall run from the filing of the complaint at 3.3%. Post judgment interest shall run at 6.16%.

Judgment shall be entered against plaintiff and in favor of defendants Maurice Blais, Jocelyne Blais, and M. Blais Properties, LLC.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

17

Dated: November 8, 2013

_____
Thomas D. Warren
Justice, Superior Court

18

NORMAND A COTE VS M BLAIS PROPERTIES LLC
CASE #:PORSC-CV-2011-00545

-----------------------------------------------------------------------------------

009607 ATTORNEY: BIGOS, MICHAEL T
ADDR: 129 LISBON STREET PO BOX 961 LEWISTON ME 04243-0961
    FOR:NORMAND A COTE                    PL       RTND  12/15/2011


003980 ATTORNEY: DEL BIANCO, H PETER
ADDR: 477 CONGRESS STREET 14TH FLOOR PO BOX 15215 PORTLAND ME 04112-5215
    FOR:MAURICE G BLAIS                 DEF      RTND  07/24/2012
    FOR:JOYCELYNE B BLAIS               DEF      RTND  07/24/2012
    FOR:M BLAIS PROPERTIES LLC         DEF      RTND  12/15/2011
    FOR:M BLAIS BUILDERS CORPORATION   DEF      RTND  07/13/2012