2002 ME 16

**Michelle STEWART o/b/o Kristen STEWART**

v.

**Harrison ALDRICH.**

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2001.

Decided: Jan. 31, 2002.

Walter F. McKee (orally), Lipman & Katz, P.A., Augusta, for plaintiff.

Kenneth D. Pearce (orally), Monaghan Leahy, LLP, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.*

CLIFFORD, J.

[¶ 1] Michelle Stewart appeals from a summary judgment entered in the Superior Court (Kennebec County, *Atwood, J.*) in favor of Harrison Aldrich in her personal injury action brought on behalf of her minor child Kristen Stewart. The Superior Court concluded that Aldrich, as the landlord, could not be sued by an invitee of his tenants for a dog bite occurring in the tenants' apartment because the dog was owned by and under the control of the tenants. We discern no error and affirm the judgment.

[¶ 2] In December of 1997, Aldrich rented an apartment to Donald and Robin Bailey pursuant to a month-to-month agreement. The tenancy agreement was not in writing and, according to Aldrich, most of the terms were "implied," and the obligations of the parties were governed by "reasonableness." For example, Aldrich indicated that it was "understood" that he would perform traditional landlord functions like making repairs and plowing snow, and the tenants would be responsible if they caused excessive damage to the apartment. The Baileys took possession of the apartment at either the end of December, 1997 or the beginning of January, 1998.

[¶ 3] Aldrich indicated that he had evicted tenants in the past. He had always given tenants whom he was evicting a thirty-day notice of eviction. According to him, the tenants would either leave or, upon realizing that he was "serious," would correct the underlying problem that had led him to begin eviction proceedings. He did not recall ever giving a seven-day notice of eviction, but believed it was his right to do so.

[¶ 4] Aldrich did not prohibit his tenants from having dogs. The rules regarding animals were also governed by an implied rule of reason. For example, Aldrich testified[1] that it was understood that the tenants could not have an inordinate number of dogs (e.g., ten), and that the tenants were expected to keep the dogs on a leash when outside the apartment. The parties dispute whether Aldrich specifically told the Baileys that they could get a dog. He testified that he did not recall discussing the subject of dogs with the Baileys before he found out that they had one. The Baileys testified that they asked Aldrich whether they could get a dog and he told them that he would not have a problem if they did.

[¶ 5] The Baileys acquired a dog, an Akita, sometime in the Spring of 1998. On April 24, 1998, the dog attacked the Baileys' two-year-old daughter and created a serious wound on her head.

[¶ 6] On July 28, 1998, seven-year-old Kristen Stewart, who was a friend of the Baileys' daughter, arrived unexpectedly at the Bailey apartment. Robin Bailey was getting ready to go to the doctor's office,

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. All the testimony referred to was taken at depositions during discovery.

but told Kristen that she could stay while she got ready. Robin went into the bedroom to get ready, and Kristen stayed in the living room with the dog. A few minutes later Robin heard a scream and rushed into the living room to find that Kristen had been attacked by the dog and received injuries to her face from the attack.

[¶ 7] Stewart alleges that Aldrich had a duty to ensure that the premises he rented to tenants did not possess any dangerous conditions and that he violated this duty by allowing the Baileys to remain in the apartment with a dog that he knew to be dangerous. The court granted Aldrich's motion for a summary judgment, and this appeal by Stewart followed.

[¶ 8] When reviewing the Superior Court's entry of summary judgment, we review the judgment for errors of law. *Stanton v. Univ. of Me. Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045, 1048. We consider only the portions of the record referred to, and the material facts set forth in, the statements submitted pursuant to M.R. Civ. P. 56(b). *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. We examine this evidence in the light most favorable to the nonmoving party. *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571, 575; *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926, in order to determine whether the record "supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law." *Greenvall v. Maine Mut. Fire Ins. Co.*, 1998 ME 204, ¶ 5, 715 A.2d 949, 951 (quoting *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me.1996)). If the moving party is the defendant, then he must show that the evidence, taken in the light most favorable to the plaintiff, fails to establish a prima facie case for each element of the cause of action. *Champagne v.*

*Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 847.

[¶ 9] Although there is a dispute about whether Aldrich knew that the dog had previously bitten the daughter of his tenants, the Baileys presented sufficient evidence to support a finding that he did. Further, although the trial court did not explicitly draw the inference that knowledge of the previous attack meant that the landlord should have known that the dog was dangerous or had vicious propensities, a factfinder could reasonably draw such an inference from the evidence.

[¶ 10] A landlord is generally not liable for a dangerous condition that comes into being after the lessee takes exclusive possession and control of the premises. *Hankard v. Beal*, 543 A.2d 1376, 1378 (Me. 1988); *Nichols v. Marsden*, 483 A.2d 341, 343 (Me.1984); *see also* RESTATEMENT (SECOND) OF TORTS, § 355 (1965) ("a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sub-lessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession"). A landlord is liable for defective or dangerous conditions on his property under the exclusive control of his tenants only when the landlord:

(a) fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant[s] nor discoverable by [them] in the exercise of reasonable care;

(b) gratuitously undertakes to make repairs and does so negligently; or

(c) expressly agrees to maintain the premises in good repair.

*Nichols*, 483 A.2d at 343 (citations omitted) (summarizing prior precedent).

[¶ 11] Stewart does not contend that any of the *Nichols exceptions* apply in this

case. Rather, she contends that Aldrich has not satisfied the predicate condition of *Nichols* that he had no control over the dangerous condition because Aldrich could have terminated the rental agreement after he learned that the Baileys' dog was vicious. Stewart argues that because Aldrich had the power to coerce the Baileys into getting rid of the dog by threatening to terminate the tenancy by eviction, or by not renewing the rental agreement, he had "control" over the dog's presence on the premises, and consequently cannot avoid liability under the test articulated in *Nichols.* We are unpersuaded by her argument.

[¶ 12] Stewart is correct that *Nichols* requires the landlord to establish the absence of "control" in order to avoid liability for a dangerous condition on the premises. *See Rodrigue,* 694 A.2d at 927 ("Landlord-tenant liability frequently involves an analysis of whether the tenant took possession of an area, and if so, whether the landlord retained some control over it."). Accordingly, in order to avoid liability for harm caused by a dangerous condition on the premises, the landlord must show that he did not have the requisite control *and* that none of the three enumerated *Nichols* exceptions apply. The dispositive issue here is whether Aldrich, because he could have evicted the Baileys, or not renewed their tenancy, retained "control" over the presence of the dog on the premises at the time of the attack within the meaning of *Nichols.* The mere power to coerce the conduct of tenants through the threat of eviction or by refusing to renew the tenancy, however, is not the "control" contemplated by *Nichols.*[2]

[¶ 13] Although we have not explicitly defined the term "control," the cases applying *Nichols* illustrate that "control" means a power over the premises that the landlord reserves pursuant to the terms of the lease or the tenancy, whether express or implied, and does not include the incidental control that comes from being able to threaten tenants with nonrenewal of a lease or with eviction. Landlords have been held liable for dangerous conditions because of the retention of "control," but those cases generally involve facts where some power is reserved by the landlord pursuant to the terms of a lease. *See Anderson v. Marston,* 161 Me. 378, 213 A.2d 48, 50 (1965). If landlords retain control over common areas in the rental property, they can consequently be held liable for dangerous conditions in those areas. Moreover, landlords may retain control over non-common areas when they reserve certain rights or responsibilities over the premises by the terms of the lease or tenancy. *Hankard,* 543 A.2d at 1378 (question of fact whether landlords retained control over parking lot because they retained responsibility to plow snow on it); *Rodrigue,* 694 A.2d at 927 (landlord could be held liable for injury on stairs if, under the lease, the stairs were not conveyed to tenant, and consequently retained by landlord). We have never held, however, that the landlord retains control over the premises merely because he has the power to coerce tenants through the power of eviction or nonrenewal of a lease.

[¶ 14] Understanding "control" in this way is also consistent with our concept of leaseholds. A bedrock principle of our jurisprudence has been that a lease or

---

2. This case does not present a situation where the landlord would have the discretionary power to evict the tenants for the presence of a dangerous condition pursuant either to the terms of the lease or some other source of law. Rather, Aldrich had unfettered discretion to evict or to refuse to renew the tenancy in any given month. We do not address the question of the potential liability of a landlord who fails to enforce the terms of a lease.

tenancy is equivalent to a conveyance for almost all purposes, and when a tenant assumes exclusive control and possession of the premises, the tenant becomes like the owner of the property for most purposes. *See Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 517 (Me.1996) ("A lease conveys a possessory interest in the land to another for a period of time."); *Hankard v. Beal*, 543 at 1378 (citing RESTATEMENT (SECOND) OF TORTS, §§ 355, 356 (1965)) ("the tenant becomes the owner and occupier and is subject to the liabilities of one in possession"). The exceptions to this rule are limited and well-defined.

[¶ 15] Both parties cite cases from other jurisdictions that have addressed the issue presented here. While we have not decided a case involving these precise facts, the facts are not so peculiar that the outcome is not dictated by the principles espoused in our prior decisions.

[¶ 16] Moreover, we are not persuaded that "public policy" considerations favor recognizing Stewart's cause of action against the landlord Aldrich. There is a strong public policy consideration underlying the rule in *Nichols*, i.e., that just as a seller of personal property is not held liable for the manner in which a property is used after the sale to an irresponsible buyer, lessors should be able to convey interests in property for a limited duration of time without assuming inordinate liability for the conduct of those to whom they rent or lease. This policy benefits both the lessor and the lessee. The law has recognized that people may acquire property interests of a limited duration without completely forfeiting their freedom to make their own decisions about how they will live their lives. If landlords were to be held responsible for the conduct of their tenants, then the result would be substantially more regulation by the landlord of the previously private conduct of tenants. *Nichols* still retains its vitality as a clear rule that properly balances competing public policy considerations.

[¶ 17] Stewart advances no other theory to support a conclusion that Aldrich had control of the premises and she does not argue that any of the *Nichols* exceptions apply. Accordingly, the Superior Court properly concluded that in these circumstances the defendant did not owe a duty to the plaintiff as a matter of law.

The entry is:

Judgment affirmed.