STATE OF MAINE

KNOX, ss.

STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

JUL 23 2002

RECEIVED AND FILED
Susan Guillette, Clerk

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-067

JENNIFER PETERS,

Plaintiff

v.

DECISION AND ORDER

ELDERSERV, INC., *et al.*,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

JUL 25 2002

## I.     Introduction.

This matter is before the court on the motion of the defendants, Elderserv, Inc., et al., (Elderserv),[1] for summary judgment, seeking final disposition of this case in their favor. For the reasons stated herein, the motion is to be denied.

## II.    Discussion.

In her complaint, the plaintiff, Jennifer Peters (Peters), alleges that while she was a tenant of Elderserv, she was injured when a sliding closet door in her apartment came off of its track and struck her, causing her injuries. She says that the defendant had notice of this defect, was negligent in not repairing and maintaining the door, and that this negligence was the proximate cause of her injuries.

By its motion, the defendant asserts that, as a matter of law, it cannot be liable for the plaintiff's injuries on the undisputed facts before the court. Before addressing the merits of the defendant's arguments, it is useful to recite the material facts submitted by each party in support of, or in opposition to, this motion.

---

[1] Elderserv, Inc. apparently operates the Rankin Center, also known as the Methodist Conference Home. The defendants throughout will be considered as a singular entity, namely, Elderserv.

The plaintiff moved into the Rankin Center, operated by Elderserv, as a tenant under a lease with the defendant. On moving into her apartment, the closet bi-fold doors were found to be in working order, and had never come out of their tracks. In April, 1999, the doors did become stuck in their tracks, and within two days of this occurrence the plaintiff reported this problem on a maintenance log at the Rankin Center. In the 30 days which followed, she reported this problem orally to the maintenance personnel there five or six times, but never reported the doors as dangerous as she did not know they were dangerous, and did not think the doors would fall on her. In the interim, she had stopped using the doors except on laundry days.

On May 30, the plaintiff put towels in the closet and went to close the bi-fold door whereupon it came "out of its tracks and down on top of me and hit me, knocked me to the floor, and then fell down on top of me." Peters Dep., p. 64.

In July, 1999, another tenant, Pamela Widdecomb, pulled on her sliding closet door which fell on her, bruising her. Tenant Richard Connell also had problems with his closet door jamming.

Jeffrey Kee was the supervisor of maintenance at the Rankin Center at the time of the plaintiff's injury. He was not aware of other doors coming off of their tracks there in the past but did say that the door involved in this accident appears to have come out of its track. Kee said he tries to base his priorities on safety; if he believes "it's a safety issue, that would take priority . . ." Kee Dep., p. 21. According to Kee, the maintenance staff at the Rankin Center attempts to respond to repair a deficiency within 24 hours of its report, except on weekends.

2

Arlene Woodman, the Director of Housing, has indicated that the defendant did not respond to the plaintiff's request for repair because there was no urgency to it, but that Peters had given proper notice of the problem with her door under the parties' lease. The door was repaired after the plaintiff was injured.

The parties' lease provides, in pertinent part, that the landlord agrees to "maintain all equipment and appliances in safe and working order; make necessary repairs with reasonable promptness." Lease Agreement, ¶ 10(a)(4), (5). It also provides, in part, that the tenant agrees to "give the landlord prompt notice of any defects in the plumbing, fixtures, appliances, . . . or any other part of the unit or related facilities." *Id.*, ¶ 10(b)(5).

The plaintiff proposes to present an expert witness who would testify that the failure of the plaintiff's closet door was due to worn and frayed parts and the lack of proper attachment of the door to its frame. He would offer the opinion that if the defendant had responded to the plaintiff's request for a repair in a timely way, or had inspected the apartment and repaired the defect in the bi-fold door in a reasonable time, the event injuring the plaintiff would not have occurred.[2]

A summary judgment is proper "if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law." *Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305 (quoting *Peterson v. State Tax Assessor*, 1999 ME 23, ¶ 6, 724 A.2d 610, 612). Where, as here, the defendant has moved for summary judgment, a plaintiff must establish a

---

[2] The defendant has filed a motion in limine to exclude this expert's testimony at trial on the issue of causation. It has not, however, filed a "reply statement of material facts" pursuant to M.R. Civ. P. 56(h)(3). Because it has not done so, this "fact" must be deemed admitted. M.R. Civ. P. 56(h)(4).

3

prima facie case for each element of her cause of action. *Fleming v. Gardiner*, 658 A.2d 1074, 1076 (Me. 1995). In order to prevail in a negligence action, a plaintiff must prove that "a defendant had a duty to conform to a standard of care and that the breach of that duty proximately caused an injury to the plaintiff." *Lewis v. Knowlton*, 1997 ME 12, ¶ 7, 688 A.2d 912, 913. On the other hand, if a plaintiff presents evidence on a required element of her cause of action so that, if she presented no more, the opposing party would be entitled to a judgment as a matter of law, then summary judgment may properly be entered for the defendant. *June Roberts Agency v. Venture Properties*, 676 A.2d 46, 48 (Me. 1996).

The defendant's principal argument is that the plaintiff cannot, as a matter of law, establish its tort liability for her injuries. More particularly, the defendant argues that it owed no duty of care to the plaintiff and, therefore, there is no foundation on which to establish its liability in tort. In this regard, it relies on the case of *Nichols v. Marsden*, 483 A.2d 341, 343 (Me. 1984), which acknowledged the common law rule that a landlord is not liable to a tenant for injuries to the tenant caused by a defective condition under the latter's exclusive control. *Nichols* also observes, however, that there are three exceptions to this rule, two of which are applicable to this case. Thus, a landlord may be found liable in a situation where he "(a) fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant nor discoverable by him in the exercise of reasonable care . . .; or (c) expressly agrees to maintain the premises in good repair." *Id.* (internal citations omitted).

With reference to the second exception cited, the defendant argues that any liability of a landlord pursuant to this exception is in contract and not in tort, relying on *Jacobson v. Leaventhal*, 128 Me. 424, 148 A. 281 (1930) for this proposition. If this is

4

correct, defendant's sole liability to the plaintiff would be for repairs reasonably anticipated by the landlord's breach of the contract to maintain the premises in good repair.

Current Maine jurisprudence, however, requires an examination of the degree of control exercised by a landlord in a determination of its liability for injuries occurring on leased premises. *Rodrigue v. Rodrigue*, 694 A.2d 924, 926 (Me. 1997). In this regard, it is the landlord's responsibility to establish absence of control over the area where an injury occurred, and that none of the exceptions to landlord immunity articulated in *Nichols* apply, in order for it to avoid liability for harm caused by a dangerous condition on the premises. *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, ¶ 12, 788 A.2d 603, 607. Said differently, if a landlord exercises control over leased premises, or one of the *Nichols* exceptions applies, it may be held liable for injuries to a tenant on its premises. This, of course, imposes a duty upon a landlord, the breach of which may result in tort liability. *See. e.g., Chiu v. City of Portland*, 2002 ME 8, ¶¶ 11-15, 788 A.2d 183, 187-88. As this is the current state of Maine law, and because the defendant has not established on this record the absence of control and the inapplicability of the three exceptions to immunity established by *Nichols*, it may be found liable in tort for injuries which the plaintiff claims were proximately caused by the defendant's breach of its duty to maintain the premises over which it had control via the parties' lease.

The Restatement (Second) of Property, § 17.5 (1976) is in agreement with this result. It reads as follows:

§ 17.5 WHERE LANDLORD CONTRACTS TO REPAIR

A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant

5

or his subtenant by a condition of disrepair existing before or arising after the tenant has taken possession if:

    (1)    the landlord, as such, has contracted by a promise in the lease or otherwise to keep the leased property in repair;

    (2)    the disrepair creates an unreasonable risk to persons upon the leased property which the performance of the landlord's agreement would have prevented; and

    (3)    the landlord fails to exercise reasonable care to perform his contract.[3]

The defendant, while contesting the applicability of this articulation of property law to this case, argues that if it is applicable, the disrepair of the plaintiff's closet door did not create an unreasonable risk which the performance of the landlord's agreement would have prevented. This is a factual and not a legal contention for which dispute may be found in the record.

Taking the evidence in the light most favorable to the plaintiff, *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, ¶ 8, 788 A.2d 603, 606, a factfinder could reasonably determine that the closet door, as an object of some weight held in a vertical position by mechanical devices, came loose from these devices, fell, and struck the plaintiff. That being so, the plaintiff can reasonably argue that the landlord's failure to inspect, maintain or repair these devices created an unreasonable risk of injury to the plaintiff when using the door. Thus, because the landlord had a responsibility under the parties' lease to maintain or repair the door, the plaintiff may also argue that if it had adhered to this responsibility, the risk created by its failure to act ultimately resulted in injury to the plaintiff.

Indeed, the Restatement provides an illustration similar to the facts in this case which would impose liability on a landlord who contracted to keep an apartment in

---

[3] RESTATEMENT (SECOND) OF TORTS, 1965, § 357 contains virtually the same text. Note, however, comment a has been revised to reflect that it no longer represents a minority view.

good repair but failed to do so. In that hypothetical case, the tenant notified the landlord that a ceiling in his apartment was in need of repair, but not such that it appeared to threaten an immediate fall. The ceiling did fall, injuring those lawfully on the premises, and the landlord, according to the illustration, would be subject to liability if he had time to make the repairs in the exercise of reasonable diligence and care. RESTATEMENT (SECOND) OF PROPERTY, § 17.5, illustration 5.

Last, while the admissibility of this evidence is to be contested at trial, the plaintiff has presented unrebutted expert testimony in opposition to this motion that if the defendant had responded to the plaintiff's request to inspect or repair her door in a reasonable time, the incident which injured her would not have occurred.

Based on the foregoing, the court must conclude, on this record, that the defendant may be held liable pursuant to the law as expressed in the Restatement (Second) of Property, § 17.5,which the court concludes is applicable in this case.

The defendant also argues that it did not have reasonable notice of the defective condition of the plaintiff's door because the plaintiff did not complain of the precise mechanical problem with the door. No Maine law is cited for this proposition and the authorities cited herein in the context of the other arguments presented do not require that an injured party complain with specificity as to the exact defective condition which caused injury. Thus, as noted infra, illustration 5, § 17.5 of the Restatement of Property (Second) would impose liability on a landlord for a falling ceiling if he had reasonable notice that the ceiling was in need of repair, but not, apparently, that he also had notice of the exact defect in that structure.

In the end, as noted, this debate is a factual one which must be resolved at trial. On this record, it is plain that the plaintiff gave the defendant ample notice that her door

stuck on its tracks. However, did the defendant reasonably believe that the complaint was a minor one that entailed no danger to the tenant? Did the defendant wait too long to attend to the plaintiff's complaint? If the defendant had inspected and maintained the premises as promised, would it have discovered the defect which caused the door to fall? These, and questions akin to them, represent factual disputes which a factfinder might reasonably resolve in favor of the plaintiff, there being no legal requirement that the defendant was entitled to a notice of the precise defect which ultimately caused the plaintiff's injuries.

The defendant's last argument is comparable to its others. It claims that because the plaintiff has failed to show how the closet door came off of its tracks, she cannot establish the causative element for her injuries. However, a deficiency which causes an accident may be established by direct or circumstantial evidence provided by eye witnesses or the physical facts known. These, in turn, may provide the reasonable inferences which satisfy the plaintiff's burden of proof. *Rodrigue v. Rodrigue*, 694 A.2d 924, 927 (Me. 1997). Moreover, a plaintiff's burden in a tort action is to establish that "there is some reasonable connection between the act or omission of the defendant and the damage which the plaintiff suffered. *Houde v. Millett*, 2001 ME 183, ¶ 10, 787 A.2d 757, (quoting *Crowe v. Shaw*, 2000 ME 136, ¶¶ 8-9, 755 A.2d 509, 512). "The question whether a defendant's acts or omissions were the proximate cause of a plaintiff's injuries is generally a question of fact, and a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause." *Id.* ¶ 11.

In the court's view, the plaintiff satisfies these tests on this record. She has testified that she had complained that the closet door became stuck in its tracks so that

8

she had to stop using it. On the date of injury, however, she tried to close the door and it came out of its tracks, fell, and knocked her down. From this, a factfinder could reasonably conclude that a defect in, or disrepair of, the closet's track mechanisms had allowed or caused the door to fall, injuring the plaintiff. Moreover, the plaintiff intends to present expert testimony that the failure of this closet door to operate safety was due to worn and frayed parts and the lack of proper attachment of the door to its frame. Such testimony, if admitted, would corroborate the plaintiff's repeated complaints to the defendant and the description of the event in which she was injured. In the court's view, such evidence is not insufficient, as a matter of law, to establish the proximate causation of the plaintiff's injuries so that summary judgment might otherwise be entered for the defendant.

## III.    Conclusion.

In sum, it must be concluded that there are genuine disputes of material fact and that, where the facts are agreed to, the defendant is not entitled to judgment as a matter of law.

Accordingly, the entry will be:

Defendant's Motion for Summary Judgment is DENIED.

So ordered.

Dated: July___19___, 2002

John R. Atwood
Justice, Superior Court

9

Date Filed __10/3/00__ __Knox__ Docket No. ___CV-00-067___

County

Action ___Negligence___

ELDERSERV,INC.
METHODIST CONFERENCE HOME, INC., AND
SUMMER STREET PRESERVATION, INC., all
JENNIFER PETERS vs. d/b/a "RANKIN CENTER"

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Andrews B. Campbell, Esq. | Michael L. Rair, Esq. (ALL DEFTS.) |
| PO Box 1351 | PO Box 2580 |
| Waldoboro, ME  04572 | Bangor, ME  04402-2580 |
| | 942-2209 |

| Date of Entry | |
|---|---|
| 10/3/00 | Complaint, $120 filing fee and Summary Sheet filed.<br>Case File Notice mailed to Attorney Campbell. |
| 10/12/00 | Amended Complaint and Summary Sheet filed by Attorney Campbell. |
| 10/19/00 | Defendants' Defenses and Answer to Plaintiff's Amended Complaint filed. |
| 10/20/00 | On 10/19/00, Scheduling Order filed:<br>Discovery Deadline is June 19, 2001.<br>Dated: 10/19/00<br>Worth, Judge, District Court<br>Sitting in Superior Court by Designation<br>Copy mailed to Attorneys Campbell and Rair. |
| 11/7/00 | On 11/6/00, $300 jury fee paid by Attorney Campbell. |
| 11/7/00 | On 11/6/00, Notification of Discovery Service filed:<br>—Defendant Elderserv, Inc.'s First Set of Interrogatories to Plaintiff; and<br>—Defendant Elderserv, Inc.'s Request for Production of Documents served on Attorney Campbell on 11/3/00. |
| 11/7/00 | Notification of Discovery Services filed:<br>—Plaintiff's First Interrogatories to each and all Defendants; and<br>—Plaintiff's First Request for Documents to each and all Defendants served on Attorney Rair on 11/8/00. |
| 11/16/00 | On 11/13/00, Notification of Discovery Services filed:<br>—Defendants' Objections to Plaintiff's First Set of Interrogatories; and<br>—Defendants' Objections and Responses to Plaintiff's Request for Production of Documents served on Attorney Campbell on 11/9/00. |
| 11/27/00 | Notification of Discovery Service filed:<br>—Plaintiff's Objections to First Interrogatories propounded by Defendant Elderserv, Inc.; and<br>—Plaintiff's Objections to First Request for Documents of Defendant Elderserv,Inc., served on Attorney Rair on 11/22/00. |