STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-14-185

ALICE ALBEE,

      Plaintiff

      v.

JOHN TROTT, JR., et al.,

      Defendants

)
)
)
)
)
)
)
)
)
)

STATE OF MAINE
Cumberland ss Clerk's Office

OCT 21 2015

RECEIVED

## ORDER ON GINN PORTLAND, LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant Ginn Portland, LLC's ("Ginn") has moved for summary judgment on Plaintiff Alice Albee's negligence claim against Ginn as the owner of the commercial property where she sustained the injuries for which she seeks damages in this action. Oral argument was held on October 6, 2015.

Based on the entire record, Ginn's motion for summary judgment is granted.

*I. Background*

A.   Undisputed Facts

For the purpose of summary judgment, the following facts in this case are not in dispute as between the Plaintiff Alice Albee and Defendant Ginn:

On October 12, 2011, a vehicle operated by Defendant New Bern Transport Corporation ("New Bern") and driven by Defendant John Trott, Jr. struck Plaintiff, resulting in her injury. (Def.'s Supp. S.M.F. ¶ 2.) The incident occurred on the paved parking area adjacent to a 7-Eleven convenience store and gas station located at 704 Congress Street in Portland, Maine. *Id.* ¶¶ 1, 8. New Bern, through its employee Trott, was delivering Pepsi products to the 7-Eleven store at the time of Plaintiff's injury. *Id.* ¶ 3. Ginn is the owner of

1

the property that encompasses the store and paved parking area where the accident happened. *Id.* ¶ 5.

Plaintiff filed a negligence complaint against Trott, New Bern, Pepsico, Inc., and Pepsi Bottling Group, Inc. on April 16, 2014. (Compl. 1.) On June 11, 2104, Plaintiff amended her complaint, dropping Pepsico, Inc. and Pepsi Bottling Group, Inc. from the lawsuit and adding Ginn. (Am. Compl. 1). Plaintiff has not brought suit against the tenant who rents the property from Ginn and operates the 7-Eleven convenience store.

On July 6, 2015, Ginn moved for summary judgment, claiming it is entitled to judgment as a matter of law on Plaintiff's claim. Plaintiff Albee filed a timely opposition.

## II. *Analysis*

### A.    Applicable Law

Plaintiff has brought a negligence claim against Ginn as the landlord of the property where her injury occurred. "To establish a prima facie case of negligence, a plaintiff must establish that a duty was owed, the duty was breached, and the plaintiff's injuries or damages were proximately caused by the breach of that duty." *Radley v. Fish*, 2004 ME 87, ¶ 12, 856 A.2d 1196 (internal citation and quotation marks omitted). Whether a defendant owed the plaintiff a duty of care is a legal question decided by the court. *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, 118 A.3d 789. The existence of a duty is fact specific, and the facts of a given case determine whether a defendant owed a duty of care to the plaintiff. *Id.*

A possessor of land owes persons lawfully on the property a duty to use reasonable care. *Hankard v. Beal*, 543 A.2d 1376, 1378 (Me. 1988). When a tenant assumes exclusive possession and control of a property, "the tenant becomes like the owner of the property for most purposes." *Stewart v. Aldrich*, 2002 ME 16, ¶ 14, 788 A.2d 603. Thus, a landlord is generally not liable for injuries caused by a dangerous condition that came into being after a tenant takes

2

exclusive possession and control of a property. *Id.* ¶ 10. However, a landlord is deemed to retain control over the common areas of a leased property and may be liable for injuries caused by a dangerous condition in those areas. *Chiu v. City of Portland,* 2002 ME 8, ¶ 11, 788 A.2d 183.

While the plaintiff generally must establish facts supporting a prima facie case of negligence, the absence of control is an essential element that the landlord must establish in order to avoid liability.[1] *Id.* ¶ 12. "Control" in this context means "power over the property that the landlord reserves pursuant to the terms of the lease or the tenancy, whether express or implied, and does not include the incidental control that comes from being able to threaten tenants with nonrenewal of a lease or with eviction." *Stewart,* 2002 ME 16, ¶ 13, 788 A.2d 603.

B. Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.,* 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer,* 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

---

[1] There are also three exceptions under which landlord may still be held liable for a dangerous condition on property under the exclusive control of a tenant: (a) when the landlord fails to disclose the existence of a latent defect which the landlord knew or should have known existed, but is not known to the tenant nor discoverable with reasonable care; (b) when the landlord gratuitously makes negligent repairs to the property; or (c) when the landlord expressly agrees to maintain the property in good repair. *Stewart,* 2002 ME 16, ¶ 10, 788 A.2d 603 (internal citation omitted). Generally, in order to avoid liability, a landlord must also show that none of the enumerated exceptions applies. *Id.* ¶ 12. Plaintiff, in her opposition, does not contend that any of these enumerated exceptions applies in this case.

3

As noted above, Ginn bears the burden of proving that, as landlord, it has not exercised or retained control over the property and thus is not liable to Plaintiff. When the party moving for summary judgment bears the burden of persuasion on a claim or defense, the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015. When a motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). The evidence offered by the non-moving party to establish a dispute of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## C. Ginn's Motion for Summary Judgment

The threshold issue raised by Ginn's motion is whether Ginn has met its initial burden to establish that it does not exercise or retain control over its property. Only if Ginn has met its burden does the focus shift to whether Albee has effectively controverted Ginn's showing by generating a genuine issue of material fact that precludes summary judgment.

In support of its motion for summary judgment, Ginn contends that, under the terms of its lease with the tenant, 7-Eleven, Inc., Ginn does not control, possess, maintain, or monitor the property. (Def.'s Supp. S.M.F. ¶¶ 9-12). Ginn further contends that it did not in fact control, possess, maintain, or monitor the property on October 12, 2011, the date of Plaintiff's injury. *Id.* ¶¶ 13-16. Ginn further contends that it exercised no control over the loading and unloading of trucks on the property at any time on or before October 12, 2011. *Id.* ¶ 18.

Ginn's position relies on two affidavits of Ellen Fontaine, a property manager for Ginn, and the exhibits thereto, as well as deposition testimony of Ms. Fontaine. According to

4

Fontaine, Ginn does not in fact control, posses, monitor, or maintain the property, and that Ginn has never exercised control over the loading or unloading of trucks on the property at or before the time of Plaintiff's injury. *Id.* ¶¶ 10-14. Fontaine asserts that 7-Eleven, Inc. has been in exclusive possession and control of the entire property since assuming the lease for the property in 1998. *Id.* ¶ 16.

Plaintiff's opposition to summary judgment contends that there are genuine issues of fact as to the extent of Ginn's control. Plaintiff contends that Ginn failed to establish that the lease agreement provided by Ginn was the actual agreement defining Ginn's relationship with Ginn's tenant as of the date of her injury. (Pl.'s Opp. S.M.F. ¶¶ 4, 7, 10.) Plaintiff also contends that, even if the lease presented by Ginn governs, the terms indicate that Ginn has retained a sufficient degree of control over the property to support Plaintiff's premises liability claim against Ginn. *Id.* ¶¶ 9, 11 13, 16, 18-19. Plaintiff makes further arguments independent of the Lease Agreement that are addressed below.

(1) Whether the Lease Agreement Governs, and If So, Whether It Allocates to Ginn The Type or Degree of Control Necessary to Create Landlord Liability for Injury

Ginn contends that a document titled Lease Agreement and dated August 17, 1978 defines Ginn's landlord rights and responsibility regarding the property at 704 Congress St. (Fontaine Aff. 6/29/15 ¶ 3, Ex. A.) According to the Lease Agreement, the lessor of the property in 1978 was Mark H. Ginn and the lessee was RMR, Inc. *Id.* Ex. A ¶ 1.

The Lease Agreement states that Mark H. Ginn leased to RMR, Inc. the property with "the right to use all adjoining parking areas, driveways, sidewalks, roads, alleys, and means of ingress and egress in so far as lessor has the power to lease." *Id.* Ex. A ¶ 2. The Lease Agreement further provides that, in addition to maintaining the building on the property in good repair, the tenant is also responsible for maintaining "the surface of the parking area, sidewalks, and driveways." *Id.* Ex. A ¶ 9. There are no terms in the Lease Agreement under

5

which the landlord retains control over the property, the parking area, sidewalks, or driveways. *Id.* Ex. A.  Fontaine's affidavit asserts that 7-Eleven, Inc., the current tenant, assumed the Lease Agreement in 1998. *Id.* ¶ 5.

Plaintiff contends that without proof of an assignment, there is no evidence that the Lease Agreement produced by Ginn is the actual lease agreement that was in effect on the date of Plaintiff's injury and either (1) Ginn has failed to produce the actual lease agreement, or (2) 7-Eleven, Inc. was actually a tenant-at-will at the time of Plaintiff's injury.

In fact, Ginn has produced sufficient evidence to support its contention that the Lease Agreement defines the landlord-tenant relationship regarding the property.  The Fontaine affidavits and her deposition testimony establish the following facts, none of which has been controverted by Plaintiff:

> The original tenant, RMR, Inc. assigned the Lease Agreement to Christy's Market, Inc. on December 15, 1993. ((Def.'s Supp. S.M.F. ¶¶ 4-5, 7; Fontaine Aff. 6/29/15 ¶¶ 3-7; Fontaine Aff. 8/19/15 ¶ 3, Ex. B.)  In May 1998, the Southland Corporation acquired Christy's Market, Inc. and was assigned the Lease Agreement. (Fontaine Aff. 8/19/15 ¶¶ 4-5, Ex. C.)  The Southland Corporation became 7-Eleven, Inc. in 1999. (Fontaine Aff. 8/19/15 ¶ 6.); (Pl.'s Ex. B Fontaine Dep. 13-15.)  In 2007, 7-Eleven, Inc. exercised its second ten-year option under the Lease Agreement, extending the 1978 Lease Agreement for the property at 704 Congress Street in Portland, Maine through September 2018. (Fontaine Aff. 8/19/15 ¶ 8, Ex. D.)

The court concludes that Ginn has established that the Lease Agreement defines its lease obligations, so the question becomes whether anything in the Lease Agreement affords Ginn the type or degree of control over the premises necessary to render Ginn potentially liable to the Plaintiff. Plaintiff asserts that paragraphs 10 and 20 of the Lease Agreement meet that standard.

Paragraph ten states in total:

> 10.  ALTERATIONS.  LESSEE shall not make any alterations involving structural changes without securing LESSOR'S written consent.  Other alterations or additions, such as to store front, marquee and nonweightbearing

6

partitions may be made by LESSEE in good workmanlike manner without cost to LESSOR.

(Pl.'s Ex. A ¶ 10.) As stated above, "control" in this context means "power over the property that the landlord reserves pursuant to the terms of the lease or the tenancy, whether express or implied." *Stewart*, 2002 ME 16, ¶ 13, 788 A.2d 603. Under paragraph ten, Ginn expressly reserves only the power to approve the tenant's structural changes. Paragraph ten does not reserve for Ginn any power to make structural changes on the property on its own. There is no language in paragraph ten under which Ginn expressly or impliedly reserves control over the entire property or the parking area. Also, there is no evidence that any structural changes were in progress as of the date of Plaintiff's injury.

Furthermore, Plaintiff's argument ignores paragraph nine of the Lease Agreement, under which the tenant assumes exclusive control over the maintenance of the property, including the parking area. Paragraph nine states:

> 9. MAINTENANCE. LESSEE agrees to maintain in good repair the outside walls, roof and floor of the building and the surface of the parking area, sidewalks, and driveways, as well as structural soundness of the building...

(Pl.'s Ex. A ¶ 9.) When paragraphs nine and ten are read together, it is clear that the tenant has assumed exclusive control over the maintenance of the property, including the parking area, and that Ginn has retained only the power to approve structural changes. Therefore, the language of paragraph ten does not support a finding that Ginn retained control over the property or owed Plaintiff a duty of care.

Plaintiff also argues that paragraph twenty of the Lease Agreement gives Ginn the necessary degree of control over the property. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 3-4.) Under paragraph twenty, Ginn may "enter into and upon the same property or any part thereof in the name of the whole and repossess the same as of his former estate, and expel the TENANT" for any violation of the Lease Agreement. (Pl.'s Ex. A ¶ 20.) As discussed above,

"control" over the property does not include incidental control that comes from "the power to coerce tenants through the power of eviction or nonrenewal of a lease." *Stewart*, 2002 ME 16, ¶ 13, 788 A.2d 603. Thus, the fact that the Lease Agreement expressly grants Ginn the power to evict the tenant is insufficient evidence for a fact finder to conclude that Ginn retained control over the property. Therefore, paragraph twenty does not support a finding that Ginn retained control over the property.

> (2) Whether Circumstances Outside the Lease Agreement Raise Genuine Issues as to The Type or Degree of Control Retained by Ginn Over the Property

Plaintiff makes two arguments, based on circumstances apart from the terms of the Lease Agreement, that she contends raise genuine issues as to whether Ginn retains sufficient control over the property to make it liable to her.

She contends that Ginn demonstrated control over the property by contacting its tenant regarding this lawsuit. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 4-5.) At deposition, Fontaine testified that Ginn contacted 7-Eleven, Inc. after learning of this lawsuit. (Pl.'s Ex. B Fontaine Dep. 17, 30-31.) However, "control" in this context means "power over the property that the landlord reserves pursuant to the terms of the lease or the tenancy, whether express or implied." *Stewart*, 2002 ME 16, ¶ 13, 788 A.2d 603. Contacting the tenant to inquire about this lawsuit does not evidence that Ginn has expressly or impliedly retained any control over the property under the terms of the lease and does not support a finding that Ginn retained control over the property.

Plaintiff also argues that her injury occurred in a common area of the property under Ginn's control, meaning, apparently, an area outside the property leased by Ginn to 7-Eleven, Inc. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 5.) However, Plaintiff cites no facts supporting her contention that the parking area where her injury occurred was outside the property leased exclusively to the operator of the 7-Eleven store. (Pl.'s Opp. S.M.F. ¶¶ 9, 13, 18-19). There is

8

no indication in the Lease Agreement or anywhere in the record that there are other tenants on the property or that the parking lot of the property is a common area. In its response to Plaintiff's opposition, Ginn cites to the affidavits and testimony of Fontaine, which name 7-Eleven, Inc. as the only tenant on the property. (Def.'s Reply to Pl.'s Opp. S.M.F. ¶¶ 9, 18-19). Further, as previously discussed, the Lease Agreement places on the tenant the responsibility to maintain "the surface of the parking area, sidewalks, and driveways" under the terms of the Lease Agreement. (Pl.'s Ex. A ¶ 9.) Nothing in the Lease Agreement grants Ginn the right to control the parking area. Thus, there is no factual basis for finding that the injury occurred in a common area under Ginn's control.

### III. Conclusion

Based on the entire record, the court concludes that Defendant Ginn Portland LLC has established that there are no genuine issues of material fact regarding its control over the property where Plaintiff was injured, and that it is entitled to judgment as a matter of law on Plaintiff's claim against it, because it has leased the property to a tenant without retaining or exercising the type or degree of control over the property that is essential to imposing liability on a landlord for injury to a third party on leased property controlled by the tenant.

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

Defendant Ginn Portland, LLC's motion for summary judgment on Plaintiff Alice Albee's negligence claim is granted. Plaintiff's negligence claim against Defendants John Trott, Jr. and New Bern Transport Corporation remains pending.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated October 20, 2015           _____

Plaintiff-Steven Silin Esq/Caj Boatright Esq
Defendant Trott and New Bern-Elizabeth
 Stouder Esq
Defendant Ginn Portland LLC-Stephen Wade Esq

A.M. Horton
Justice, Superior Court

9