STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         Civil Action
                                                  Docket No. CV-16-0193


NORMA BENNETT, Personal
Representative of the ESTATE
OF ELAINE BENNETT,

                      Plaintiff,

         v.                                       **ORDER DENYING**
                                                  **SUMMARY JUDGMENT**

MELISSA PAQUETTE d/b/a
MELISSA'S MIGHTY FINDS,

and

SUZANNE MADORE,

                      Defendants.

Norma Bennett, Personal Representative of the Estate of Elaine Bennett, brings this action against Suzanne Madore and Melissa Paquette, d/b/a Melissa's Mighty Finds for damages allegedly caused when Elaine Bennett fell down steps in Paquette's store. Before the court is Madore's motion for summary judgment. For the reasons that follow, the motion is denied.

### Summary Judgment Factual Record

On November 7, 2014, Elaine Bennett and her daughter, Norma, were shopping in Melissa's Mighty Finds (Melissa's) in Arundel. (Defendant's Statement of Material Facts "DSMF" ¶¶ 1, 2, 4, 6.) Elaine Bennett fell and was

1

injured. (DSMF ¶ 4.) Although present at the time, Norma Bennett did not witness the fall. (DSMF ¶ 6.)

Paquette operates Melissa's as a sole proprietorship. She leases ground-floor space in a building owned by Madore that is located at 1479 Portland Road in Arundel. (DSMF ¶ 1.) There is no written lease. (DSMF ¶¶ 2, 8.) Madore carried an insurance policy for the premises and did not ask Paquette to obtain additional insurance. (Plaintiff's Statement of Additional Material Facts "PSAMF" ¶¶ 3-4.)

Prior to Paquette taking possession of the premises, Madore had not made any changes or improvements to it. (DSMF ¶ 11.) Inside there is parquet flooring on the entry level and an additional lower level accessed by descending one step onto a platform and another step onto the lower level. (DSMF ¶ 3.) The stairs did not have a handrail on either side. (DSMF ¶ 3.) Previous tenants, not Madore herself, installed the flooring and interior steps. (DSMF ¶ 10.)

After Paquette took possession, she placed pieces of colored tape on the top step as well as on the middle step as a warning to customers that there were steps down to the lower level. (DSMF ¶ 15; Paquette Dep. 23:1-3, 21:15-18, 22:11-15, 11:11-14.) Paquette "always make[s] sure the common areas are cleaned" and when customers enter the store she "give[s] them a lay of the land of the rooms." (DSMF ¶ 14; Paquette Dep. 57:11-12, 60:5.)

Paquette had not considered installing a railing on the steps because she did not see the need for one. (DSMF ¶ 16; Paquette Dep. 12:16-20.) Paquette did not do anything to the premises other than placing the tape on the steps because

2

she was unsure whether she had full control over the leased space to do so. (Plaintiff's Opposing Statement of Material Facts "POSMF" ¶¶ 13, 17.)

Madore believes that her only ongoing responsibilities for the leased premises were plowing the parking lot and providing water; and that Paquette was responsible for everything else. (DSMF ¶ 9.) Madore acknowledged in her deposition that, to the extent that she was the owner of the property, she "controlled things like where railings and other safety devices might be." (PSAMF ¶ 7; Madore Dep. 22:21-23:6.) Madore was aware that there were no railings on the stairs leading to the lower rooms in the building and had not considered installing them. (PSAMF ¶ 9; Madore Dep. 7:25-8:4.) Madore testified that she had not investigated the relevant building codes to determine if railings were required. (PSAMF ¶ 10; Madore Dep. 8:8-10.) Madore further stated, "[Paquette] has the right to do whatever she wants in that lease but if it came to fixtures, I would presume she would ask me [for permission]." (PSAMF ¶ 6; Madore Dep. 21:5-7.) Madore would expect Paquette to ask permission to install a handrail. (PSAMF ¶ 6; Madore Dep. 21:18-21.) Madore also acknowledged that Paquette may not want to improve a fixture on the property because she does not have a long-term lease. (Madore Dep. 21:15-17.) Paquette additionally noted in her deposition that she did not install any safety measures because she believed "the landlord has control over them." (PSAMF ¶ 13.)

Madore has moved for summary judgment on the basis that, as a matter of law, she owed no duty of care to Bennett because Paquette, as lessee of the

3

premises, had exclusive control and responsibility and there was no duty to remedy or warn of any danger that was open and obvious at the time.[1]

## Summary Judgment Standard

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

## Discussion

Although the question of whether a party owes a duty of care is a question of law to be determined by the court, "the inquiry as to the existence of a duty is fact-intensive" and requires analysis of "facts relevant to foreseeability, control, and the relationship of the parties." *Brown v. Delta Tau Delta,* 2015 ME 75, ¶¶ 9, 14, 118 A.3d 789; *Davis*, 2011 ME 88, ¶ 11, 26 A.3d 787.

---

[1] The motion also asserts that none of the landlord exceptions for dangerous conditions under *Steward v. Aldrich,* 2002 ME 16, ¶ 10, apply here. These exceptions come into play when a lessor successfully raises a lack-of-control defense to liability. In light of the court's conclusion that the motion fails due to a genuine issue of material fact on the question of control, it is unnecessary to address this point.

4

## 1. Control of Premises

A landowner who leases property to another is not liable for injuries caused by defective condition of the premises "that are within the exclusive possession and control of a lessee." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 9, 694 A.2d 924. *See Benham v. Morton & Furbish Agency*, 2007 ME 83, ¶ 15, 929 A.2d 471, *quoting Cole v. Lord*, 160 Me. 223, 226, 202 A.2d 560, 562 (1964) (tenant takes property for better or worse). *See also Stewart v. Aldrich*, 2002 ME 16, ¶ 14, 788 A.2d 603 ("lease is equivalent to conveyance, and tenant who "assumes exclusive control and possession of the premises" is like an owner for most purposes.)

"Control" means "power over the premises that the landlord reserves pursuant to the terms of the lease or tenancy, whether express or implied . . . ." *Stewart v. Aldrich*, 2002 ME 16, ¶ 13, 788 A.2d 603. The degree of control retained, if any, is a question of fact that must be determined in resolving the legal determination of whether or not a duty exists. *See Brown*, 2015 ME 75, ¶ 14, 118 A.3d 789. If a lessor does retain a degree of control, either with respect to common areas or within the leased premises themselves, there may be an ongoing duty toward invitees. *Rodrigue*, 1997 ME 99, ¶ 11, 694 A.2d 924; *Hankard*, 543 A.2d at 1377.

Generally, it is through a written lease that a lessor reserves control or specifies ongoing responsibilities for the leased premises. Here, there was no written lease; there was only an oral rental agreement that effectively created a commercial tenancy at will. There are material facts in dispute concerning the

5

parties' relationship, expectations, and degree of control over the premises to make alterations relevant to the issue in this case.

Madore believed that she was only responsible for snow removal and providing water for the premises, and that she and Paquette agreed to that arrangement. Paquette undertook some remedial measures to warn customers about the step-down into the lower level of the store, but was not sure whether she had authority to install a railing on the stairs. Madore herself stated that she "controlled things like where railings and other safety devices might be;" that if it came to installing fixtures, she assumed Paquette would ask permission; and that she may have expected Paquette to ask permission to install a handrail. On this record, the court cannot conclude there is no genuine issue of material fact as to the issue of control.

This is not a case where the alleged dangerous condition arose after the tenancy was created, *see Hankard v. Beal,* 543 A.2d 1376, 1378 (Me. 1988) (slip and fall on ice in parking lot), or was unrelated to the condition of the premises themselves, *see Stewart,* 2002 ME 16 (tenant's dog bites an invitee). The principal alleged defective condition in this case (absence of a handrail) existed prior to the tenancy and was a condition Madore knew about.

## 2. Open and Obvious Danger

Madore also contends that she is entitled to summary judgment because a landlord has no duty to warn business invitees of dangerous conditions in leased premises that are "open and obvious." The main thrust of her argument again centers upon the issue of control, and not upon the characteristics of an

6

"open and obvious danger." *See* Defendant Suzanne Madore's Motion for Summary Judgment and Incorporated Memorandum of Law, at 8-9 ("landlord has no duty to modify and open and obvious danger on leased premises under the exclusive control of tenant"). *See Miller v. Hooper,* 112 A. 256, 257 (Me. 1921); *Cole,* 202 A.2d 560, 562 (Me. 1964) (tenant takes property with obvious defects "for better or worse").[2] For the same reasons discussed above, summary judgment on this record is not warranted.

### Conclusion and Order

For the reasons set forth above, Suzanne Madore's motion for summary judgment is hereby denied.

The entry shall be: "Motion for summary judgment denied."

SO ORDERED.

Dated: December 29, 2017

ENTERED ON THE DOCKET ON: 1/2/18

Wayne R. Douglas
Justice, Superior Court

---

[2] *But see* Section Restatement (Second) of Torts, § 539 (1972) (lessor may be liable to business invitee where lessor knows or by the exercise of reasonable care could discover a condition posing an unreasonable risk of harm; has reason to expect that the lessee will admit them before the condition can be corrected; and fails to exercise reasonable care to discover or remedy the condition); *Prodigy Servs. Co. v. S. Broad Assocs.,* 64 F.3d 48, 49 n.2 (2d Cir. 1995) ("landlord may be liable to a business invitee if the landlord knows or should know of a defective condition on the property that existed at the time the lessee takes possession, and the land is leased for purposes involving the admission of the general public.") Although the Law Court has not yet considered Section 539, the Court has on other occasions looked to the Restatement for guidance on the law, including specifically in the area of premises liability. *See Williams v. Boise Cascade Corp.,* 507 A.2d 576, 577 (Me. 1986) (Adopting Section 343A of the Restatement).

7

ALFSC-CV-16-193

ATTORNEY FOR PLAINTIFF:

PETER CLIFORD, ESQ.
CLIFFORD & CLIFFORD LLC
62 PORTLAND ROAD, SUITE 37
KENNEBUNK  ME  04043

ATTORNEY FOR DEFENDANT SUZANNE MADORE:

WENDELL LARGE, ESQ.
BETSY WAKEFIELD, ESQ.
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND  ME  04112-9545

ATTORNEY FOR DEFENDANT MELISSA PAQUETTE:

ROBERT GUILLORY, ESQ.
GUILLORY LAW OFFICE
PO BOX 57
SACO  ME  04072-0057